UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| US FINANCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 50296 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| PHAROS CB HOSPITALITY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff US Finance, Inc. brings this suit against Defendant Pharos CB Hospitality, LLC alleging breach of contract.[1] R. 1, Compl.[2] Specifically, US Finance claims that it agreed to seek out investors to finance Pharos's business in exchange for a 4% fee on the funds that Pharos received as a result of US Finance's efforts. *Id.*

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1332. Plaintiff US Finance is a citizen of Illinois because it is incorporated and has its principal place of business in Illinois. R. 1, Compl. ¶ 1. Defendant Pharos is a citizen of North Carolina, Virginia, New Jersey, Massachusetts, Florida, South Carolina, and Tennessee because it is a limited liability company, *see Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006) ("The citizenship for diversity purposes of a limited liability company . . . is the citizenship of each of its members."), and its members are citizens of those states, *see* R. 25-1, Def.'s Supp. Juris. Statement; R. 37-1, Def.'s Second Supp. Juris. Statement; R. 40-1, Def.'s Third Juris. Statement; R. 43, Def.'s Fourth Supp. Juris. Statement. (Two of Pharos's members are IRAs. Like a limited liability company, an IRA takes the citizenship of its members. *See Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) ("[W]hen an artificial [unincorporated] entity is sued in its name, it takes the citizenship of each of its members."). Recent case law suggests that an IRA's beneficiaries are its members for citizenship purposes. *Cf. id.* (holding that, for purposes of diversity jurisdiction, the shareholder beneficiaries of a trust were its members); *RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d 689 (7th Cir. 2016) (determining that the beneficiaries of a pension fund were its members). So, here, one of the IRAs is a citizen of North Carolina, and the other is a citizen of Massachusetts. *See* Def.'s Fourth Supp. Juris. Statement ¶ 2.) The amount in controversy requirement is satisfied because US Finance is seeking $236,000 in damages. *See* Compl. ¶ 4.

[2]Citations to the record are noted as "R." followed by the docket number and, if necessary, the page or paragraph number.

¶ 9. US Finance allegedly secured a $5.9 million investment for Pharos, but Pharos did not pay US Finance the commission it believes it was owed. *Id.* ¶¶ 12, 15, 19. Pharos now moves to dismiss US Finance's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* R. 13, Def.'s Br. For the reasons stated below, Pharos's motion is granted and the case is dismissed, but without prejudice to give US Finance a chance to amend its complaint, if it thinks that the complaint can be fixed.

**I. Background**

For purposes of this motion, the Court accepts as true the factual allegations in US Finance's complaint. *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011). On July 28, 2015, Pharos signed a letter drafted by US Finance. *See* Compl. ¶ 7; R. 1-1, Proposal Letter. The letter, a copy of which is attached to the complaint,[3] said that Pharos was "seeking an equity investment related to" the acquisition of a hotel in Tampa, Florida, and "set[] forth a general overview of preliminary terms and conditions applicable to US [Finance] in order to proceed with the proposed

---

[3]In considering a motion to dismiss, a court may review exhibits attached to the complaint without converting the motion to one for summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). "Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Here, US Finance attached two documents to its complaint: (1) a July 23, 2015 proposal letter—including a proposal-fee receipt and agreement—and (2) a November 20, 2015 demand letter. *See* Proposal Letter; R. 1-2, Demand Letter. This Court may consider both in deciding the instant motion. What it cannot (and will not) do is consider the declaration of Gary Fuchs that Pharos filed in support of its motion to dismiss, *see* R. 13-1, Fuchs Dec. Evaluation of a dismissal motion is limited to the complaint and its attachments, so considering Fuchs's declaration would require converting the motion to a summary judgment motion (with its corresponding requirement that the non-movant have a chance to take discovery).

financing" of the hotel acquisition "(the 'Proposal')." Proposal Letter at 1. The preamble to the letter explained the Proposal's preliminary nature:

> [t]his overview is not, is not intended to be, and should not be construed as an attempt to establish all of the terms and conditions relating to the Proposal or any resultant financing. It is intended only to serve as a guideline for certain terms and conditions and how the Proposal documents might be structured, and it is not intended to preclude negotiations within the general scope of these terms and conditions. Any final documentation regarding the Proposal will be subject to further due diligence, negotiation and issuance of a binding commitment letter, along with all other relevant documentation.

*Id*. The letter then continued on to specify certain project parameters, such as a total project cost of $32,648,553, *id.*, an "[e]quity to be [p]rovided" of $9,898,553, *id.* at 2; *see also id.* ("US [Finance] equity advance shall be 30.32% of the Cost of the Project."), and a "[f]ee for [e]quity" of 4%, *id*. It further obligated Pharos to pay US Finance a $10,000 "Proposal Fee"—"to be applied towards any fees and expenses incurred by" US Finance—on the date that Pharos accepted the letter. *Id.*; Compl. ¶ 10. Pharos paid, and US Finance received, the proposal fee on November 13, 2015. Compl. ¶ 10.

In October 2015, US Finance introduced Pharos to Heitman Financial Services, "a global investment management company specializing solely in real estate." Compl. ¶ 11. "As a result of this introduction to Heitman, [Pharos] received a capital investment in the amount of approximately $5,900,000.00 on or about November 13, 2015." *Id.* ¶ 12. On November 20, 2015, counsel for US Finance sent Pharos a demand letter requesting that Pharos pay US Finance 4% of the amount of Heitman's investment, or $236,000. *Id.* ¶ 14; Demand Letter. To date, Pharos has not paid US Finance the requested amount. Compl. ¶ 15.

3

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

Pharos argues that US Finance's complaint fails to state a claim for relief because the letter agreement upon which it bases the breach of contract claim is really a non-binding letter of intent. *See* Def.'s Br. at 11-12. The Court agrees.

Under Illinois law,[4] a plaintiff must establish four elements to make out a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting injury to the plaintiff. *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). Here, the purportedly enforceable contract is a "Proposal" (or "proposal letter") that "sets forth a general overview of *preliminary* terms and conditions applicable to US [Finance] *in order to proceed* with the proposed financing" of the Tampa hotel. *See* Proposal Letter at 1, 6 (emphases added). Letters like these—that is, letters designed "to provide the initial framework from which the parties might later negotiate a final . . . agreement," *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chem. Grp., Inc.*, 873 F.2d 155, 158 (7th Cir. 1989) (internal quotation marks omitted)—are often called "letters of intent." *See, e.g., id.*

In Illinois, "letters of intent may be enforceable," but "such letters are not necessarily enforceable unless the parties intend for them to be contractually binding." *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990); *see also BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136

---

[4]This is a diversity action, so state law governs substantive issues. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). "When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits." *Id.* (internal quotation marks omitted). Neither Pharos nor US Finance has raised a conflict of law issue in this case, so Illinois law applies.

(7th Cir. 2011) ("A document can be a contract without calling itself a contract; many letters of intent create contractual rights."); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275, 277 (7th Cir. 1996) ("[A]greements to negotiate toward the formation of a contract are themselves enforceable as contracts if the parties intended to be legally bound."). Whether the parties intended for a letter to be contractually binding does not turn "on what the parties subjectively believed, but [rather] on what they expressly manifested in their writing." *Ocean Atl. Dev. Corp. v. Aurora Christian Sch., Inc.*, 322 F.3d 983, 995 (7th Cir. 2003). "If the parties' written words do not show a clear intent to be bound, then they will not be held to a preliminary agreement." *Id.* at 996 (internal quotation marks omitted). And there is no need for terms or provisions that explicitly spell out the lack of a binding effect: "[T]he parties need not recite a formula to demonstrate that a definitive agreement lies in the future. Words expressing contingency or dependence on a subsequent event or agreed-on element will do." *PFT Roberson, Inc. v. Volvo Trucks N. Am., Inc.*, 420 F.3d 728, 732 (7th Cir. 2005)

When assessing enforceability, a court must first determine, as a matter of law, "whether the language of a purported contract is ambiguous as to the parties' intent." *Quake Constr.*, 565 N.E.2d at 994. "If no ambiguity exists in the writing, the parties' intent must be derived by the . . . court, as a matter of law, solely from the writing itself." *Id.* To derive the parties' intent, a court may consider, "among other things, the complexity of the agreement, the amount of money involved, whether the agreement requires a formal writing for full expression of its terms, and

whether the negotiations indicate that a formal written document is contemplated." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 588 (7th Cir. 2012); *see also Quake Constr.*, 565 N.E.2d at 994. Ultimately, "a letter of intent . . . that reflects a tentative agreement contingent upon the successful completion of negotiations that are ongoing, does not amount to a contract that binds the parties." *Ocean Atl.*, 322 F.3d at 995-96; *see also PFT Roberson*, 420 F.3d at 731 ("When negotiators say that agreement is subject to a more definitive document, Illinois treats this as demonstrating intent not to be bound until that document has been prepared and signed. Illinois is averse to enforcing tentative agreements that are expressly contingent on the signing of formal or final documents." (citations omitted)). The key question is whether the parties have really advanced beyond negotiations to the point of specific, binding promises that merely need to be reduced to a formal writing. *See Citadel Grp.*, 692 F.3d at 588 ("The fact that parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements mere negotiations, where . . . the ultimate contract will be substantially based upon the same terms as the previous document." (internal quotation marks omitted)).

In this case, US Finance cannot, as a matter of law, establish the existence of an enforceable contract. Indeed, the plain, unambiguous language of the letter agreement shows a clear intent *not* to be bound. The letter refers to itself as a "Proposal," and states that it is based on "*preliminary* conversations" between the parties. Proposal Letter at 1 (emphasis added). It sets forth a "*general* overview of

7

*preliminary* terms and conditions applicable to US [Finance] *in order to proceed* with the *proposed* financing" of the hotel, and "is not intended to be . . . an attempt to establish all of the terms and conditions." *Id.* (emphases added). Rather, it is "*intended only to serve as a guideline* for certain terms and conditions and how [future] documents might be structured." *Id.* (emphasis added). By its own terms, "[a]ny final documentation regarding the Proposal will be *subject to further due diligence, negotiation and issuance of a binding commitment letter*, along with all other relevant documentation." *Id.* (emphasis added); *see also id.* at 3 ("The Proposal and any resultant transaction are contingent upon internal US [Finance] and, if applicable, any assignee's executive committee approval. Certain changes may need to be implemented to secure a final approval."); *id.* ("In order for US [Finance] to consider a commitment, US [Finance] will need to conduct its usual and customary due diligence . . . ."); *id.* ("Any commitment on the part of US [Finance] or its assignees, related to the Proposal or the Project, requires credit approval by the Executive Committee of US [Finance] and/or its assignees."). The letter expressly anticipates that a final commitment might not ever result. *See, e.g.*, *id.* at 1 (specifying a closing date "no later than 120 days from the date of final Commitment, *if any*, by US [Finance]" (emphasis added)); *id.* at 3 ("*[I]f a commitment is issued* by or on behalf of US [Finance] or any of its assignees, . . . US [Finance] shall be entitled to the full amount of the fee set forth in the immediately preceding sentence." (emphasis added)). Viewed together, this language reflects only an intent that there be more negotiations before *possibly* arriving at a future

8

commitment letter; it does not reflect an intent to be bound by the preliminary terms in the Proposal itself.

The proposal-fee receipt and agreement attached to the letter—and executed contemporaneously with the Proposal—further corroborates this conclusion. *See* Proposal Letter at 6. The receipt states that "[t]he acceptance and commitment by [US Finance] of the Proposal, or a transaction substantially similar, if any, shall be evidenced by a written commitment letter or other written documentation as [US Finance] shall determine in its sole discretion." *Id.* It further specifies that the $10,000 Proposal Fee "is solely intended to cover US [Finance's] expenses prior to the issuance of definitive documents for the transaction outlined in the Commitment." *Id.* Finally, it conspicuously warns in capitalized words: "THE PROVISIONS OF THIS PROPOSAL FEE RECEIPT AND AGREEMENT DO NOT, AND SHALL NOT BE INTERPRETED TO CONSTITUTE A COMMITMENT BY ANY FUNDING SOURCE TO FINANCE ANY PROPOSED TRANSACTION." *Id.* So, although the payment of the $10,000 proposal fee represented an immediately binding agreement, even the document setting the fee warned that nothing more was intended to be binding.

In sum, the plain language of the letter—along with the proposal-fee receipt and agreement—establishes that it is only a preliminary set of guidelines, and anticipates the issuance of a final, binding commitment letter, subject to the completion of successful negotiations and several other specified occurrences. Under Illinois law, that sort of language does not demonstrate an intent to be bound. *See*

9

*Ocean Atl.*, 322 F.3d at 995-96; *PFT Roberson*, 420 F.3d at 731. Thus, the letter agreement is not an enforceable contract.

Even if the letter agreement were an enforceable contract, US Finance has still failed to state a viable breach of contract claim. US Finance contends that, by signing the letter, Pharos committed itself to paying a 4% commission on any investment that US Finance secured for it. *See* R. 26, Pl.'s Resp. Br. at 1. But nothing in the letter says that US Finance was entitled to a 4% *commission* for *any investment* that Pharos received. Instead, it sets out a "[f]ee for [e]quity" of 4% in exchange for US Finance providing "30.32% of the Cost of the Project" ($32,648,554), which is approximately "$9,898,553." *See* Proposal Letter at 1-2. US Finance's complaint does not allege that US Finance invested or found third parties to invest a total of $9,898,553. It mentions only the $5.9 million investment by Heitman. *See* Compl. ¶¶ 12, 17. So US Finance has not adequately alleged that it performed its contractual obligations; indeed, on the facts asserted in the complaint, US Finance fell around $3.99 million short. *See Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) ("An essential allegation of a complaint based upon a breach of contract is that the plaintiff performed all contractual conditions required of him."). Without satisfying its own promise, US Finance cannot hold Pharos to its alleged promise to pay. Pharos's motion to dismiss is granted.

As an alternative to the breach of contract claim, US Finance asks the Court for permission to re-plead its complaint to seek relief on a quasi-contract basis. *See* Pl.'s Resp. Br. at 8. Under Federal Rule of Civil Procedure 15(a), district courts

should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible."). Generally speaking, in Illinois, "a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Although the Court is skeptical that US Finance can adequately plead an unjust enrichment theory of liability, the dismissal of the current complaint will be without prejudice to filing an amended complaint. The case is still in an early procedural stage, and this would be US Finance's first time amending the complaint. Accordingly, the Court grants US Finance leave to amend its complaint.

### IV. Conclusion

For the reasons stated above, US Finance's complaint is dismissed without prejudice. If US Finance wishes to amend its complaint, then it must do so by November 7, 2016. If no amended complaint is filed by that date, then US Finance's case will be dismissed with prejudice and judgment will be entered.

ENTERED:

                                      s/Edmond E. Chang
                                  Honorable Edmond E. Chang
                                  United States District Judge

DATE: October 24, 2016